# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------- x

STRUCTURE TONE LLC, successor by merger to  :
STRUCTURE TONE, INC.,
                             Plaintiff,:

              -against-
                                :

TRAVELERS PROPERTY CASUALTY       :
COMPANY OF AMERICA,
                                :

                 Defendant. x

-------------------------------------------------------------------

**To the above named defendant(s)**

Plaintiff designates *NEW YORK COUNTY* as the place of trial

**S U M M O N S**

Index No: _____/2022

Date Purchased: __/__/2022

The basis of venue is
*Plaintiff's Place of Business*
330 West 34th Street
New York, New York 10001

      **YOU ARE HEREBY SUMMONED** to answer the complaint of the plaintiffs
which is served herewith, and to serve an Answer on the undersigned attorneys for the
plaintiffs, THE DILLON LAW FIRM LLP within twenty (20) days after service of the
Summons and Complaint or within thirty (30) days after service of the Summons and
Complaint if not served upon you personally or if served outside of the State of New York.
In the event of your failure to answer the Complaint of the plaintiff, judgment will be taken
against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      March 22, 2022

                         Yours, etc.,

                         THE DILLON LAW FIRM
                         *Attorneys for Plaintiff*

By  _____
                    THOMAS DILLON
               11 Hanover Square, 20th Floor
               New York, New York 10005
               (332) 900-1600

**Defendant's Address:**
TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA
1 Tower Square
Hartford, Connecticut 06183

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- x

STRUCTURE TONE LLC, successor by merger to      :
STRUCTURE TONE, INC.,                           :       **COMPLAINT**
                                   Plaintiff,:
                                                :
            -against-                           :       Index No: _____ /2022
                                                :
TRAVELERS PROPERTY CASUALTY                     :       Date Purchased: __ / /2022
COMPANY OF AMERICA,                             :
                                                :
                                 Defendant.x
-------------------------------------------------------------------

     The plaintiff, STRUCTURE TONE LLC, successor by merger to

STRUCTURE TONE, INC., (hereinafter referred to as "ST LLC"), by its attorneys, THE

DILLON LAW FIRM LLP, as and for its Complaint in the above-captioned action

respectfully shows to this Court and alleges the following upon information and belief as

follows:

### THE PARTIES

    1.    Plaintiff, ST LLC, is a corporation duly organized and existing under the

laws of the State of New York with its principal place of business located in New York,

New York.

    2.    Structure Tone, INC., a prior New York Corporation, was merged into

Structure Tone, LLC on December 19, 2016. (See, New York Division of Corporations

Entity Form annexed hereto as Exhibit "A").

    3.    Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF

AMERICA ("Travelers"), is an insurance company duly organized under the laws of the

1

State of Connecticut with its principal place of business in Hartford, Connecticut.

## FACTUAL ALLEGATIONS

4.    On or about July 8, 2013, ST LLC entered into a contract for construction

services (the "ST LLC Contract") with Columbia University ("Columbia") for a

construction project ("the Project") at the William Black Medical Research Building, 150

West 168th Street, New York, New York ("the Premises").

5.    PJ Mechanical, Inc. ("PJ Mechanical"), entered into a written Project

Specific Subcontract Agreement ("PSSA") with ST LLC to act as a Subcontractor to

perform certain services and related work. The PSSA covers all work performed by PJ

Mechanical for ST LLC, including PJ Mechanical's work at the Project. The PSSA was

signed by PJ Mechanical on February 5, 2014. (See, Exhibit "B").

6.    The PSSA obligated PJ Mechanical to indemnify ST LLC, the Project

owner, the owner of the property, and all other parties identified to be indemnified in the

primary contract ("Indemnified Parties"). (Id. at paragraph 11.2.)

7.    The PSSA required that PJ Mechanical also procure general liability

insurance naming ST LLC and the Indemnified Parties as additional insureds on a

primary and non-contributory basis. (Id. at paragraphs 1 and 4.2.) (See, also, the Project

Insurance Requirements annexed hereto as Exhibit "C").

8.    PJ Mechanical also signed a written Blanket Insurance/Indemnity

Agreement ("BIIA") dated April 1, 2010.

9.    The BIIA covered all work performed by PJ Mechanical for Structure

2

Tone, Inc., and required PJ Mechanical to name Structure Tone, Inc., and the owner and "their Trustees, officers, directors, members, agents, affiliates and employees as additional insureds," on a primary non-contributory basis in the amount of at least $5,000,000 per occurrence and aggregate.

10.      On or about November 20, 2014, PJ Mechanical Subcontractor Penava. ("Penava") entered into a generalized Purchase Order Invoice Agreement ("Purchase Order") with PJ Mechanical. The Purchase Order was applicable for all work performed by Penava at the Premises.

11.      Travelers issued PJ Mechanical a Commercial General Liability Insurance, Primary Policy No. VTC2J-CO-8213A228-TIL-14, effective from June 1, 2014 through June 1, 2015, with a limit of $2 million per occurrence and $4 million in the aggregate (hereinafter referred to as the "PJ Mechanical Primary Policy").

12.      Pursuant to its obligations under both the PSSA and the BIIA, PJ Mechanical procured additional insured coverage for the Project Defendants under the PJ Mechanical Policy. A copy of the Certificate of Insurance showing the Traveler's coverage is annexed hereto as Exhibit "D."

13.      On or about August 19, 2014, Gustano Quiroz ("Quiroz"), an employee of Penava, allegedly suffered injuries at the Premises while working on the 20th floor of the premises (the "Accident").

14.      On or about April 18, 2016, Quiroz commenced a lawsuit seeking damages as a result of the Accident, which was filed in the Supreme Court of New York, County

3

of New York, Index No. 153266/2016 entitled Gustavo Quiroz and Jasmine Quiroz v.
New York Presbyterian/Columbia University Medical Center and Structure Tone, INC.,
(hereinafter referred to as the "Quiroz Action"). A copy of the complaint filed in the
Quiroz Action is attached hereto as Exhibit "E."

15.     The Defendants in the Quiroz Action, the Trustees of Columbia University
in the City of New York s/h/a, New York Presbyterian/Columbia University Medical
Center and Structure Tone, INC., filed an answer on June 6, 2016, and will hereinafter be
referred to collectively as "the Project Defendants." A copy of the Project Defendants'
answer is annexed hereto as Exhibit "F."

16.     By letter dated May 25, 2016, Gallagher Bassett Services on behalf of the
Project Defendants, sent a tender notice to Traveler's in regard to the Quiroz Action, with
the Summons and Complaint, Contracts and Certificate of Insurance. ("the Tender
Letter") (See, Exhibit "G").

17.     By letter dated December 14, 2016, Traveler's responded to the Project
Defendant's Tender Letter by accepting the tender and acknowledging its additional
insured coverage obligation to the Project Defendants for defense and indemnity. (See,
Exhibit "H").

18.     By letter dated January 3, 2017, Traveler's again affirmed it would accept
the tender and would leave current defense counsel, Barry, McTierran & Moore in place
as defense counsel for the Project Defendants. (See, Exhibit "I").

19.     By letter dated March 7, 2017, Traveler's attempted to withdraw its full

4

acceptance of additional insured coverage for the Project Defendants and attempted to reserve its rights as to indemnity. (See, Exhibit "J").

20. On March 16, 2017, Gallagher Bassett wrote Traveler's rejecting its attempt at rescinding additional insured indemnity coverage for the Project Defendants. (See, Exhibit "K").

21. By letter dated October 10, 2017, Traveler's rescinded its "reservation of rights" letter dated March 7, 2017. (See, Exhibit "L").

22. A decision on summary judgment motions in the Quiroz Action was rendered on November 16, 2020. (See, Exhibit "M").

23. By letter dated May 3, 2021, Traveler's again improperly attempts to assert a "reservation of rights." (See, Exhibit "N").

24. By letter dated May 18, 2021, this office demanded that Traveler's rescind its improper attempt to reserve its rights as to indemnity. (See, Exhibit "O").

25. At all relevant times, the PJ Mechanical Primary Policy was in full force and effect.

26. The Project Defendants are additional insureds under the PJ Mechanical Primary Policy for the Quiroz Action.

27. The additional insured coverage under the PJ Mechanical Primary Policy for the Project Defendants in regard to the Quiroz Action, is primary and non-contributory.

5

## AS AND FOR A FIRST CAUSE OF ACTION
### (DECLARATORY JUDGEMENT)
### (For Indemnification)

28.     The Plaintiff repeats and reiterates each and every allegation contained in

paragraphs "1" through "27" as if more fully set forth at length herein.

29.     That at the time of the Quiroz Accident, PJ Mechanical had general liability

insurance coverage under the PJ Mechanical Primary Policy applicable to the Project and

the Quiroz Action, with primary policy limits of $2 million per occurrence/$4 million

aggregate, which was in effect from June 1, 2014 to June 1, 2015, and which provides

additional insured coverage for the Project Defendants on a primary and non-contributory

basis.

30.     That pursuant to the PJ Mechanical Primary Policy, Traveler's has a duty to

provide additional insurance coverage for indemnity to the Project Defendants for the

Quiroz Action.

31.     That this additional insured coverage for the Project Defendants for the

Quiroz Action is primary and non-contributory.

32.     That, despite proper demand, Traveler's has wrongfully attempted to

reserve its rights and has withdrawn its acknowledgement of additional insured coverage

for indemnity for the Project Defendants in the underlying Quiroz Action under the PJ

Mechanical Primary Policy, in breach of the aforementioned contract, insurance

agreement and policy.

33.     That, based thereon, ST LLC has been damaged in the loss of the amount of

6

the \$2 million in primary, non-contributory additional insured indemnity limits for any monetary recovery in the Quiroz Action.

34.    That an actual cause and justiciable controversy exists and plaintiff has no adequate remedy at law.

35.    Plaintiff is entitled to a judgment declaring that, pursuant to the PJ Mechanical Primary Policy, defendant Travelers owes a duty to provide primary and non-contributory additional insured indemnity coverage for the Project Defendants for the Quiroz Action.

## AS AND FOR A SECOND CAUSE OF ACTION

36.    Plaintiff repeats and reiterates each and every allegation contained in Paragraphs "1" to "35" as if more fully set forth at length therein.

37.    Defendant accepted without reservation of rights, the tender of the Project Defendant's for defense and indemnity as additional insureds under the PJ Mechanical Primary Policy.

38.    Defendant improperly attempted to assert a reservation of rights but properly withdrew its letter.

39.    Defendant has controlled the defense of this matter since December 14, 2016.

40.    This matter is post decision on summary judgment and an appeal and is scheduled for trial on May 31, 2022.

41.    Defendant has controlled and charted a course of the defense of the Project

7

Defendants in the Quiroz Action, and as such, the character and the strategy of the

lawsuit cannot be altered given the procedural posture of the Quiroz Action.

    42.    The Project Defendants have been prejudiced by Traveler's conduct.

    43.    Defendant is estopped from denying indemnity coverage for the Project

Defendant's in regard to the Quiroz Action.

**WHEREFORE,** Plaintiff respectfully requests a declaratory judgment against

Travelers as follows:

1)    On its First Cause of Action for a declaratory judgment declaring that Travelers has an obligation to indemnify ST LLC and the Project Defendants under the PJ Mechanical Primary Policy in regard to the Quiroz Action;

2)    On its Second Cause of Action for a declaratory judgment declaring Traveler's is estopped from denying additional insured coverage for indemnity to the Project Defendant's in regard to the Quiroz Action;

3)    Together with such other relief this court deems just and proper.

Dated: New York, New York
       March 22, 2022

                      Yours, etc.,

                      THE DILLON LAW FIRM, LLP.
                      *Attorneys for Plaintiff*

By                      
           THOMAS DILLON
           11 Hanover Square, 20th Floor
           New York, New York 10005
           (332) 900-1600

        8

# EXHIBIT A



Services    News    Government    Local

# NYS Department of State
## Division of Corporations
## Entity Information

**The information contained in this database is current through August 28, 2020.**

---

**Selected Entity Name: STRUCTURE TONE, INC.**

**Selected Entity Status Information**

**Current Entity Name:** STRUCTURE TONE, INC.

**DOS ID #:** 313549

**Initial DOS Filing Date:** AUGUST 26, 1971

**County:** NEW YORK

**Jurisdiction:** NEW YORK

**Entity Type:** DOMESTIC BUSINESS CORPORATION

**Current Entity Status:** INACTIVE - Merged Out (Dec 19, 2016)

**Selected Entity Address Information**

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Chief Executive Officer**
ROBERT W MULLEN
330 W 34TH ST
NEW YORK, NEW YORK, 10001

**Principal Executive Office**
STRUCTURE TONE, INC.
330 W 34TH ST
NEW YORK, NEW YORK, 10001

**Registered Agent**
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

This office does not record information regarding the names
and addresses of officers, shareholders or directors of
nonprofessional corporations except the chief executive
officer, if provided, which would be listed above.
Professional corporations must include the name(s) and
address(es) of the initial officers, directors, and shareholders

in the initial certificate of incorporation, however this
information is not recorded and only available by viewing
the certificate.

| *Stock Information | | | Name History | | |
|---|---|---|---|---|---|
| # of Shares | Type of Stock | $ Value per | Filing Date | Name Type | Entity Name |
| 20000 | Par Value | .000 | NOV 07, 2011 | Actual | STRUCTURE TONE, INC. |
| | | | AUG 26, 1971 | Actual | STRUCTURE-TONE, INC. |

*Stock information is applicable to domestic business
corporations.

A **Fictitious** name must be used when the **Actual** name of a
foreign entity is unavailable for use in New York State. The
entity must use the fictitious name when conducting its
activities or business in New York State.

**NOTE:** New York State does not issue organizational identification numbers.

Search Results | New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS
Homepage | Contact Us



# EXHIBIT B

# SUBCONTRACT #11000557004

| | | | |
|---|---|---|---|
| **TO:** | PJ Mechanical Corporation<br>135 West 18th Street<br>New York, NY 10011 | **JOB NUMBER:**<br>**JOB NAME:**<br>**ADDRESS:** | 11000557<br>CUMC - Hammer 17 and Black 18 & 19<br>Vivariums<br>850 168th Street<br>New York, NY 10032 |

**PROJECT FLOORS:**

**ATTN:** Michael Lioudakis
**Vendor#:** 00000104

You are hereby authorized to proceed with all labor and materials to complete the HVAC work at the above noted project, including but not necessarily limited to:

- Invitation to bid letter dated 8/16/2013
- Issue for bid documents dated 7/19/2013 by FLAD Architects
- Drawing Index CUMC-ICM Central Facility Vivarium Modernization Project Manual All Phases Issued for Bid dated 7/19/2013
- Addendum 01 Dated September 03,2013 including added sheet S322.00 and revised sheets A001.00, A009.00, A220-0.00, A221-0.00,A560.00, S220.00, S221.00 & S321.00
- Addendum D2 Dated 9/27/2013
- Columbia University Exhibit B-0301302012 General Conditions for CM Agreement
- Columbia University Exhibit E-GC-CM-MWLBE Notice to bidders Minority ,woman & Local Business
- Enterprise Initiative & Work Force requirements.
- STI Construction and phasing schedule dated 8/7/2013
- STI Logistics plan
- Columbia University Exhibit F Energy and Environmental guidelines during Construction.
- Columbia university Exhibit I- Columbia University guidelines for Commissioning.
- Schedule M form dated7-17-2012.
- Exhibit I contractor Subcontracting Supplier Plan.
- Initial Project Manning report.
- Appendix F-Letter Expressing subcontractors Project Employment & Contracting obligations to the unions.
- STI Rider A- General Project rider all trades dated 8/16/2013

**Scope of work:**
- Trade Specific scope of Work Rider B dated 8/16/2013
- Maintain contractors insurance per Article 8 Section 4  Commercial General Liability insurance  not less than $5,000,000 per occurance.
- Purchase Order Safety Language.
- Provide All Warranties/Guarantees
- Furnish Materials Per Specifications
- Deposit Required (Yes / No)
- On-Site Walk Thru
- Union Labor
- Tax Exempt
- MBE/WBE/LBE (Yes or No) No, Second Tier best Effort
- Contractor respondsible for means and methods required to provide complete demolition scope as per contract documents
- Contractor agrees to lump sum cost for entire project including all future escalation costs that may araise.
- Contractor agrees to CUMC standard payment terms.
- Contractor agrees to include all demolition scope as per contract plans and specifications including but not limited to work called out or project riders and project leveling sheets.
- Project Scope
- Equipment
- I/O AC-1 (Field Erected unit: Schedule period review of progress with unit manufacturer during erection of unit)
- I/O AC-19-1A
- I/O HRU-11
- I/O HRU-13
- F/I Glycol Pumps (Heat Recovery Loop)
- F/I Chilled Water (Low Temperature Loop)
- F/I Cage Wash Exhaust Fans
- F/I General Exhaust Fans
- F/I Fume Hood Exhaust Fans
- F/I Isotope Exhaust Fans

Contract #: 11000557004                                    Page 1                                    04-Feb-2014

New York NY 10003 USA

- F/I Fan Coil Units
- F/I Ductless Split AC Unit
- ~~F/I Low Temperature Chiller~~ Removed per VE
- F/I Portable AC Units (w/Window Adaptor)
- F/O Variable Frequency Drives
- Sheet Metal
- F/I Supply VAV Boxes (W/Attenuator & Hot Water Coil)
- F/I Exhaust VAV Boxes (W/Attenuator & Hot Water Coil)
- F/I Sound Attenuators
- F/I Exhaust Air Valves
- F/I Diffusers, Grilles Registers
- F/I Galvanized Sheet Metal Ductwork
- F/I Stainless Steel Sheet Metal Ductwork
- F/I Insulation
- F/I Armaflex Insulation at Cage Wash SS Duct
- F/I Exhaust Connections to Cages
- F/I Terminal Boxes at Roof Exhaust Fans
- F/I Automatic Dampers
- F/I Louvers
- F/I Fire Smoke Dampers
- F/I Fire Dampers
- F/I Duct Supports
- F/I Guy wire for Roof Mounted Fume Exhaust Ducts
- F/I Canopy Hoods (Shop fabricated or manufactured product as approved by engineer)
- Piping
- F/I Steam to Hot Water HX
- F/I Duct Steam Humidifiers
- ~~F/I Chilled Water Re-Cooling Coils~~ Removed per VE
- F/I Expansion Tanks
- F/I Glycol Piping w/Insulation
- F/I Chilled Water Piping w/Insulation
- F/I Steam Piping w/Insulation
- F/I Steam Condensate Piping (Sch 80) w/Insulation
- I/O Automatic Control Valves
- I/O Insertion Wells for Control Devices
- F/I Chemical Treatment systems
- F/I Refrigerant Piping w/Armaflex Insulation
- F/O Final Refrigerant Charge
- ~~Miscellaneous~~
- F/I Disconnect & Cap Existing System
- F/I Water Balancing
- F/I Air Balancing (~~including Re-Balance of Previous Phases~~) Traverse readings only as required for duct feeding current Phase
- F/I Chemical Cleaning
- F/I Hydrostatic Testing
- F/I Window A/C Units
- F/I Scaffolding on Roof for Installation of Work (Note: Common scaffold will be provided for duct drop at HRU-13 and @ pipe duct crossover between building)
- F/I Seismic Bracing (Identify Cost)
- F/I Rigging and Material Movement
- F/I Core Drilling
- F/I Fire Stopping (For Installed Work)
- Phase 1 & 2C will run oncurrently (Provide PM/Mobilization credit)
- Addendum #1 Dated 07.29.13
- Addendum #2 Dated 09.27.13
- Welding & Brazing on Straight Time
- Tie-Ins on Straight Time
- Overtime: Deliveries
- VE Alternate #3: Use Sch 40 Victaulic for Piping 3" and Above
- VE Alternate #4: No Re-Balancing of previous phases. Only Traverse reading of branch duct serving existing areas to be rennovated
- VE Alternate #5: No full duct cleaning (Only cleaning of existing duct at Tie-Ins at AC-1B-1A)
- VE: Delete filtrine chiller system
- 3-Phase project

NW

Purchasing Agent: Mark Dallon

Insurance: Subcontractor shall purchase, maintain and provide evidence of insurance with the coverages, types and limits specified at www.certfocus.com under the above Project Number. Subcontractor represents that, prior to execution of this Subcontract; it has accessed and reviewed the foregoing website and all insurance requirements, and understands and will purchase and maintain all required coverages. Subcontractor shall cause each of its sub-subcontractors and/or vendors of every tier regardless of any portion of the Work to purchase and maintain insurance of the same types with the same limits as required of Subcontractor and shall provide proof of coverage upon request of Contractor. The following requirements are in addition to those specified at www.certfocus.com.

1. General Requirements: All insurance shall be issued by a company(ies) lawfully authorized to do business in the jurisdiction of the Project with an AM Best rating of "A-" or above. Subcontractor shall cause each entity specified at www.certfocus.com to be named as an additional insured on all coverages (except workers' compensation) and all policy limits shall apply on a per project/location basis. The scope and limits of coverage for the additional insureds shall be the same or broader/higher as those for Subcontractor (including excess/umbrella limits). All policies shall be primary and non-contributory to any other insurance maintained by the additional insureds and shall provide waivers of subrogation in favor of each additional insured. No policy deductible or self-insured retention may exceed $10,000 per occurrence or $25,000 in the aggregate, and Subcontractor shall be solely responsible for the payment of same, regardless of cause.

2. Duration: All coverage shall be maintained, without interruption, for the duration of the Project. Subcontractor shall also maintain completed operations coverage for itself and each additional insured, in the same form and amount as ongoing operations coverage, for a period of not less than two (2) years after final completion of the entire Project or expiration of the period for warranty/correction of the Work as specified in the Contract Documents, whichever is the later.

3. Specific Requirements: If Subcontractor and/or its sub-subcontractors are performing any of the following Work at or for the Project, the following coverages are required.

3.1 Grading, Excavation, Earthwork and/or Underground Utilities: Commercial General Liability insurance must NOT exclude coverage for risks relating to "subsidence".

3.2 Professional Services (including but not limited to architectural, engineering, surveying, consulting or design/build): Professional Liability insurance, including contractual liability coverage, with limits of at least $1M per occurrence, which shall remain in place for at least two (2) years following completion of the Project.

3.3 Remediation of Hazardous Materials (as defined by federal, state or local law, and including if Subcontractor's operations create any exposure): Contractor's Pollution Liability with limits of at least $10M per occurrence and $10M aggregate for Bodily Injury, Personal Injury, and Property Damage, naming the same entities as required above as additional insureds.

4. Property Insurance: Subcontractor shall provide its own insurance for unincorporated or rented/leased materials, equipment, tools and other items. Subcontractor waives any claims against Contractor, Owner and the additional insureds for loss or damage to such items, regardless of cause. Contractor or Owner may obtain builder's risk or other property insurance covering items destined for incorporation into the Project, subject to the terms and limits of such policies. If coverage is available for any loss, Subcontractor shall pay the deductible in direct proportion to the ratio to which Subcontractor's loss bears to the entire loss, regardless of cause.

## Terms and Conditions

1. Subcontractor shall perform all Work ("Work") in accordance with the drawings, specifications, any other documents set forth on the reverse side hereof and these Terms and Conditions including, among others, Structure Tone's Contract/Purchase Order Safety Language, Safety Manual & Subcontractor Responsibilities, found at http://www.structuretone.com/ST/index.nsf/vPages/SafetyManuals?OpenDocument which is hereby incorporated by reference and made a part hereof as if fully set forth herein at length (collectively referred to as "Contract Document"). In the event no Contract Documents are set forth, the Work is to be performed in accordance with these Terms and Conditions and in a first class manner consistent with the construction practices prevailing in the area.

2. Subcontractor is bound to Structure Tone for the performance of the Work in the same manner as Structure Tone is bound to Owner under Structure Tone's contract with Owner. The pertinent parts of such contract will be made available upon Subcontractor's request. In event of any conflict between these Terms and conditions and a contract between Structure Tone and Owner, the more strict provision in favor of Structure Tone shall govern.

3. Subcontractor will furnish all labor, materials, supervision and items required for the proper and complete performance of the Work and in compliance in every respect with; (i) all applicable local, federal and state laws, codes and ordinances; and (ii) the regulations of the building in which the Work is located.

4. Subcontractor shall perform the Work in a prompt and diligent manner and in accordance with schedules given from time-to-time to Subcontractor. In the event Subcontractor fails to maintain the schedule, Subcontractor shall without additional compensation, work such overtime as Structure Tone may direct until Subcontractor is in compliance with such schedule.

5. In the event Subcontractor is delayed in the performance of the Work, Subcontractor shall be entitled only to extension of time. Subcontractor waives any claim, for damages or additional compensation for a delay in the performance of the Work, regardless of the cause of such delay.

6. The purchase order amount includes all material, labor, applicable sales tax, supervision, insurance, delivery, overhead and profit.

7. Payments of the Purchase order amount, including final payment shall be subject to the following (i) Structure Tone's payment requisition procedures; (ii) approval of Work by Structure Tone; (iii) receipt by Structure Tone of satisfactory evidence that all labor, including customary fringe payments and payments due under collective bargaining agreements, and all sub-contractors and suppliers have been paid to date and have submitted waivers of lien to the extent paid; (iv) receipt of payment from the Owner; and (v) compliance by Subcontractor with all Contract

Documents,

7.2 Receipt of payment for Subcontractor's Work from Owner by Structure Tone shall be a condition precedent to the right of Subcontractor to receive payment from Structure Tone. Subcontractor hereby acknowledges that it relies on the credit of Owner, not Structure Tone for payment of its Work.

8. Structure Tone may withhold payment because of (i) defective work not remedied; (ii) claims filed, or reasonable evidence of probable filing of claims, by third parties; (iii) failure of Subcontractor to make payment properly to sub-Subcontractors and/or suppliers; (iv) reasonable evidence the Work cannot be completed for the unpaid balance of the Purchase Order Amount; (v) failure to maintain the schedule; (vi) persistent failure by Subcontractor to carry out the Work in accordance with the Contract Documents; (vii) offsets or backcharges arising out of any other Purchase Order issued by Structure Tone to Subcontractor.

9. Subcontractor shall be liable for any damages incurred by Structure Tone as a consequence of the failure by Subcontractor to comply with this Purchase Order.

10. Subcontractor shall furnish all shop drawings necessary for the performance of the Work.

11. The insurance and indemnification provisions are set forth in the separate Blanket Insurance/Indemnity Agreement signed by Subcontractor, the terms of which are incorporated herein. In the absence of said Agreement, the following indemnification and insurance provisions shall apply.

11.2 To the fullest extent permitted by Law, Subcontractor will indemnify and hold harmless Structure Tone, Inc ("STI") and Owner, their officers, directors, agents and employees from and against any and all claims, suits, liens, judgments, damages, losses and expenses including reasonable legal fees and costs, arising in whole or in part and in any manner from the acts, omissions, breach or default of Subcontractor, its officers, directors, agents, employees and Subcontractors, in connection with the performance of any Work by Subcontractor pursuant to this Purchase Order and/or a related Proceed Order. Subcontractor will defend and bear all costs of defending any action or proceedings brought against STI and/or Owner, their officers, directors, agents and employees, arising in whole or in part out of any such acts, omission, breach or default.

11.3 Subcontractor shall obtain Workers compensation as required by law; Comprehensive General Liability Insurance (including contractual liability) and automobile insurance in amount of not less that $5,000,000 combined single limit, naming Structure Tone as additional insured, all policies to provide for 30 day notice to Structure Tone prior to cancellation or material modification.

12. Should Subcontractor at any time fail: (i) to supply a sufficient number of properly skilled workers or sufficient materials and equipment of the proper quality; or (ii) to prosecute the Work with promptness and diligence'; or (iii) to promptly correct defective Work ; Structure Tone at its option , may (a) provide such labor, materials and equipment and deduct the cost thereof, together with all loss or damage occasioned thereby , from any money then due or thereafter to become due to Subcontractor and take possession of an finish the Work by whatever method Structure Tone may deem expedient. In such event, Subcontractor shall not be entitled to receive any further payments until the Work is completed. If the cost of finishing the Work exceeds the unpaid balance of the Purchase Order Amount, Subcontractor shall pay such difference to Structure Tone.

13. Structure Tone may order additions, deletions or other revision to the Work and pending any determination of the value thereof, Sub contractor agrees to proceed with such Work when so directed by Structure Tone. Any Proceed Orders or other authorization issued to Subcontractor for additional or deleted Work shall be governed by these Terms and Conditions.

14. Subcontractor agrees to promptly correct without additional cost to Structure Tone any and all defects in the Work which may appear within the guarantee or warranty period as established in the Contract Documents, and if no such period is stipulated in the Contract Documents, then such guarantee shall be for a period of one (1) year from date of completion and acceptance of the Work by Structure Tone. Subcontractor further agrees to execute any special guarantee as provided by the terms of the Contract Documents.

15. By execution of this contract, subcontractor agrees that they have reviewed and will comply with all terms and conditions of Structure Tone's Safety Manual / Subcontractor Requirements found at http://www.structuretone.com/STI/index.nsf/vPages/SafetyManuals?OpenDocument, which are hereby incorporated by reference and made a part hereof as if fully set forth herein at length.

** Please execute and date contract - must be emailed back to: stinycontracts@structuretone.com.
** Please refer to the attached billing schedule. All invoices must match the detail as shown and be emailed to stinewyorkap@structuretone.com

Contract Total 

PJ Mechanical Corporation                                                    Structure Tone, Inc.

## Approved Billing Schedule of Value Breakdown for Subcontract No: 11000557004

| | | | |
|---|---|---|---|
| Name and Address: | Structure Tone, Inc.<br>770 Broadway<br>New York, NY 10003 | Subcontractor Name: | PJ Mechanical Corporation |
| Project Acc't Contact: | Matthew Banta | Job No: | 11000557 |
| Project Acc't Email: | matthew.banta@structuretone.com | Project Acc't Tel: | 212 251-9414 |
| | | Project Acc't Fax: | 212-896-7914 |

Account Executive:    John Donnelly, Jr.

Project Manager:    William Dunn          Estimating Contact:    Mark Ekwall

### Billing Instructions

To all Subcontractors,

Listed below is your approved Scheduled of Values to date, please read this document carefully and follow the billing instructions to avoid any delay in processing your invoices for payment.
· All invoices submitted by your company must be prepared using the industry standard AIA format (G702 and G703).
· Each invoice must include an executed "Exhibit H" for Partial RFP or an "Exhibit I" for Final Request for Payment.

Note: If you do not have a sample template of either of the forms noted above, please contact the Project Accountant. The forms will be available on our website in the near future.

The Schedule of Values listed on the G703 AIA document must include only "Approved" scope of work as noted in the breakdown listed below. Each Sub Change Order code must be listed on your G703 continuation sheet in the correct sequence. Please read the instructions below for billing on "Unapproved Scope".

### Unapproved Scope

If you have work in place that is not listed in the "Approved Schedule of Values", do not include this scope of work in your monthly request for payment to avoid delay in expediting your invoice for payment in our system, instead, submit a separate email and note "Claim" in the subject along with the Job Number/Name. Please attach all supporting documentation along with the authorization to proceed.

Please follow up with the Project Manager and/or Estimator on any "Pending" Subcontractor Change Orders.

### Invoice Submission

Please submit your monthly Request for Payment(s) electronically ONLY to the following email address noted below, along with the required reference information.
· Email address: stinewyorkap@structuretone.com
· Include the following in the Subject field: STI Job No, Job Name, Your Company Name, Month and Period fo

### Approved Billing Schedule of Value

| Column A | | Column B | | | Column C | |
|---|---|---|---|---|---|---|
| SCCO Code | Description of Work | | | CC | Base SoV | Change Orders SoV |
| 000 | Mechanical - EA0003 | | | | $4,988,000.00 | |

### Total Approved Subcontract

### AIA Instructions (G703)

The following information listed above must be inserted in the G703 AIA document as follows:

Column A – Insert the SCCO Code in the correct sequence
Column B – Insert the description of work as noted above, along with the CC Code
Column C – Insert the Appropriate Schedule of Values based on the SCCO Code

New York NY 10003 USA

Accepted By

James A. Pappas - COO

Subcontractor::

2/5/14

Date:

/s/

Mark Dalton
Purchasing Agent

# EXHIBIT C

☒ Insurance Requirements Warning

| Structure Tone, Inc.: New York (110)<br>c/o CertFocus<br>PO Box 140528<br>Kansas City, MO 64114 | Project Number: 11000557<br>CUMC Columbia University<br>650 168th Street<br>New York , NY 10032 |

## Upon completion of the certificate of insurance with the specified requirements outlined below,
### fax to 877-237-8560 or email to mailto:cert@certfocus.com.
## Requirements Provided by the Certificate Holder

**This certificate is issued as a matter of information only and confers no rights upon the certificate holder.**

The policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies. Aggregate limits shown may have been reduced by paid claims.

### General Liability

| | | |
|---|---|---|
| ☒ Commercial General Liability | Each Occurence | $1,000,000.00 |
| ☒ Claims Made  ☒ Occur | Fire Damage (Any One Fire) | $50,000.00 |
| ☒ | Med Exp (Any One Person) | $5,000.00 |
| ☒ | Personal & Adv Injury | $1,000,000.00 |
| | General Aggregate | $2,000,000.00 |
| Gen'l Aggregate Limit Applies Per: | | |
| ☒ Policy  ☒ Project  ☒ Loc | Products - Comp/Op Agg | $2,000,000.00 |

### Automobile Liability

| | | |
|---|---|---|
| ☒ Any Auto | Combined Single Limit (Each accident) | $1,000,000.00 |
| ☒ All Owned Autos | | |
| ☒ Scheduled Autos | Bodily Injury (Per Person) | |
| ☒ Hired Autos | | |
| ☒ Non-Owned Autos | Bodily Injury (Per Accident) | |
| ☒ | | |
| ☒ | Property Damage (Per Accident) | |

### Garage Liability

| | | |
|---|---|---|
| ☒ Any Auto | Auto Only - Ea Accident | |
| ☒ | Other than  Ea Acc | |
| | Auto Only:  Agg | |

**Excess Liability**

☒ Occur ☒ Claims Made

☒

☒ Deductible

☒ Retention

| | Each Occurence | $10,000,000.00 |
| | Aggregate | $10,000,000.00 |

**Workers Compensation & Employers' Liability**

☒ WC Statutory Limits

☒ Other

| E.L. Each Accident | $1,000,000.00 |
| E.L. Disease - EA Employer | $1,000,000.00 |
| E.L. Disease - Policy Limit | $1,000,000.00 |

**Other**

☒

☒

**Other Coverages**

**Endorsements**

| Description of Operations |
|---|
| 11000557, CUMC - Columbia University , 650 168th Street |

| Certificate Holder | Cancellation |
|---|---|
| Structure Tone, Inc.: New York (110) c/o CertFocus PO Box 140528 Kansas City, MO 64114 | Should any of the above described policies be cancelled before the expiration date thereof, the issuing company will endeavor to mail 30 days written notice to the certificate holder named to the left, but failure to mail such notice shall impose no obligation or liability of any kind upon the company, it's agents or representatives. |

## Mandatory Requirements as Specified by Certificate Holder

RE: CUMC ICM Vivarium Black 18 and 19 in lieu of Black AC3 - 650 168th Street – Job 11000557. Structure Tone, Inc., owners, their trustees, officers, directors, members, agents, affiliates, and employees, Trustees of Columbia University are added as additional insured's to all of the above policies (except Workmen's Compensation) which will cover all operations in connection with construction of the following project: 650 168TH Street. The above insurance is primary and non-contributory to any other insurance available. Waiver of Subrogation shall apply.

PLEASE NOTE: MUST PROVIDE A SECOND INSURANCE CERTIFICATE WITH THE FOLLOWING CERTIFICATE HOLDER:

The Trustees of Columbia University
In the City of New York
615 W. 131st. Street, 3rd. floor
New York, NY 10027
Attn.: Risk Management

with the following additional insureds : (same limits).

The Trustees of Columbia University in the City of New York, its trustees, officers, agents and employees as additional insured. This excludes Workers Comp and/ or Professional Liability.

# EXHIBIT D